1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

11 JAMES W. MILLNER, | Case No. 1:16-cv-01209-LJO-SAB (PC)

12        Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR AN IMPARTIAL DENTAL

13   v. | EXPERT WITNESS

14 DR. WOODS, et al., | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS'

15       Defendants. | RENEWED MOTION FOR SUMMARY JUDGMENT

16 | (ECF Nos. 44, 46, 47)

17 | **THIRTY (30) DAY DEADLINE**

18

19

20      Plaintiff James W. Millner is a state prisoner proceeding *pro se* in this civil rights action

21 pursuant to 42 U.S.C. § 1983.

                      **I.**

22
      **RELEVANT PROCEDURAL HISTORY**

23
     This action proceeds on Plaintiff's first amended complaint against Defendants Dr. Woods

24 and Dr. Hashem for deliberate indifference to a serious dental need in violation of the Eighth

25 Amendment. (ECF Nos. 8, 9.) On August 24, 2017, Defendant Dr. Woods filed an answer to

26 Plaintiff's first amended complaint. (ECF No. 15.) On October 27, 2017, the Court issued the

27 discovery and scheduling order. (ECF No. 24.)

28

On November 16, 2017, default was entered against Defendant Dr. Hashem. (ECF No. 28.) On January 25, 2018, Defendant Dr. Hashem filed a motion to set aside default. (ECF No. 31.) On March 5, 2018, the Court granted Defendant Dr. Hashem's motion to set aside default. (ECF No. 34.) Also, on March 5, 2018, Defendant Dr. Hashem filed an answer to Plaintiff's first amended complaint. (ECF No. 35.) On March 6, 2018, the Court issued an order extending the discovery and scheduling order to Defendant Dr. Hashem. (ECF No. 36.)

On September 7, 2018, Defendants Dr. Woods and Dr. Hashem filed a motion for summary judgment. (ECF No. 38.) On September 24, 2018, Plaintiff filed an opposition to Defendants' summary judgment motion. (ECF No. 41.) On September 28, 2018, the Court denied Defendants' summary judgment motion without prejudice on the ground that the Defendants fails to provide Plaintiff with an appropriate Rand notice. (ECF No. 43.) The Court granted Defendants 10 days in which to file a new summary judgment motion and provide Plaintiff with the appropriate Rand notice. (Id.). Finally, the Court told Plaintiff to provide written notice to the Court whether he intends to stand on his September 24, 2018 opposition or file a new opposition within twenty-one days of the filing and service of Defendants' new summary judgment motion and Rand notice. (Id.)

On October 3, 2018, Defendants Dr. Woods and Dr. Hashem filed and served a renewed motion for summary judgment. (ECF No. 44.) Defendants' renewed summary judgment motion included an appropriate Rand notice. (ECF No. 44-1.)

On October 24, 2018, Plaintiff filed an opposition to Defendants' motion for summary judgment. (ECF No. 46.) Plaintiff also filed a motion for appointment of an impartial dental expert witness. (Id.)

On October 31, 2018, Defendants filed a reply to their renewed motion for summary judgment. (ECF No. 47.) Defendants did not file an opposition to Plaintiff's motion for appointment of an impartial dental expert witness and the time to file an opposition has expired.

Accordingly, Defendants' renewed motion for summary judgment and Plaintiff's motion for appointment of an impartial dental witness are deemed submitted for review, without oral argument. Local Rule 230(l).

///

**II.**

**DISCUSSION**

**A.      Plaintiff's Motion for Appointment of an Impartial Dental Expert Witness**

Plaintiff requests that the Court appoint an impartial dental expert witness "to evaluate the dental records and films" and to "giv[e] the Plaintiff and the Defendants a non bias [*sic*] evaluation concerning the argument in this case." (ECF No. 46, at 13.)  In support of his request, Plaintiff asserts that, due to the fact that the dental records at issue in this case date from 2008 to the present, he is unable to pay for the cost of an expert witness regarding dental care, he is unable to view the dental x-rays at issue in this case, and he does not have the qualifications to properly evaluate the complex dental records and films, the Court should appoint an impartial dental expert witness "[t]o make this argument fair between the two parties[.]"  (Id.)

Federal Rule of Evidence 702 provides, in relevant part, that "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion" if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702(a).  Under Federal Rule of Evidence 706, a Court has discretion to appoint an expert witness on its own motion or pursuant to the motion of any party to the action.  Fed. R. Evid. 706(a).  "A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters." Armstrong v. Brown, 768 F.3d 975, 987 (9th Cir. 2014).  Rule 706 "only allows a court to appoint a neutral expert." Gorton v. Todd, 793 F. Supp. 2d 1171, 1177 (citation omitted).  In other words, a party may not seek appointment of an expert witness under Rule 706 "for his own benefit[.]" Id. at 1177 n.6.

"The decision of whether to appoint an expert witness under Rule 706 is discretionary." Id. at 1178.  "Expert witnesses should not be appointed under Rule 706 where not necessary or significantly useful for the trier of fact to comprehend a material issue in a case." Id. at 1181. "Expert witnesses are rarely appointed under Rule 706 because the adversary system is usually sufficient to promote accurate factfinding." Id. at 1182.

After reviewing Plaintiff's motion for appointment of an impartial dental expert witness and

1  Defendants' renewed motion for summary judgment, the Court concludes that the issues in this

2  case are not so complex as to require the opinion of a court-appointed expert on dental care to assist

3  the trier of fact.  This action proceeds on Plaintiff's first amended complaint against Defendants

4  Woods and Hashem for deliberate indifference to Plaintiff's serious dental needs in violation of the

5  Eighth Amendment.  (ECF No. 9.)  To successfully oppose Defendants' motion for summary

6  judgment, Plaintiff must demonstrate that there is a genuine issue of material fact regarding whether

7  Defendants acted with deliberate indifference to his serious dental needs.  See Jett v. Penner, 439

8  F.3d 1091, 1096 (9th Cir. 2006).  In this case, the determination of whether Plaintiff's dental needs

9  were sufficiently serious to amount to an Eighth Amendment violation will depend on Plaintiff's

10  testimony regarding the extent of his injuries and how his injuries impacted his daily life.  See

11  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by WMX

12  Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) ("The existence of an injury that a

13  reasonable doctor or patient would find important and worthy of comment or treatment; the

14  presence of a medical condition that significantly affects an individual's daily activities, or the

15  existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious'

16  need for medical treatment.").  Further, "whether a prison [dentist] acted with deliberate

17  indifference depends on that [dentist's] state of mind[,]" so an expert would not be able to given an

18  opinion or testify that a prison [dentist] was "deliberately indifferent" without giving "a false

19  impression" that the expert knows the answer, when it is the trier of fact that must decide the issue

20  of whether the prison dentist was deliberately indifferent.  Woods v. Lecureux, 110 F.3d 1215,

21  1221 (6th Cir. 1997); see also Ledford v. Sullivan, 105 F.3d 354, 359-60 (7th Cir. 1997).  Therefore,

22  under these circumstances, the assistance of a court-appointed expert on dental care would not be

23  "significantly useful for the [Court] to comprehend a material issue" in this action.  Gorton, 793 F.

24  Supp. 2d at 1181.

25      Accordingly, Plaintiff's motion for appointment of an impartial dental expert witness is

26  denied.

27  ///

28  ///

**B.** **Defendants' Renewed Motion for Summary Judgment**

1. <u>Legal Standard</u>

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." <u>Id.</u>

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. <u>See</u> <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u>

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." <u>F.T.C. v. Stefanchik</u>, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. <u>Id.</u> at 929; <u>see also</u> <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." <u>Soremekun</u>, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." <u>Anderson</u>, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

    2.   <u>Discussion</u>

        **a.**    **Summary of Plaintiff's First Amended Complaint**

The incidents alleged in the first amended complaint occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP"). (First Amended Complaint, ECF No. 8, at 7, ¶ 3.)[1] Plaintiff names Dr. Woods and Dr. Hashem, dentists at KVSP, as defendants. (<u>Id.</u> at 7, ¶¶ 4-5.)

Prior to December 2014, Plaintiff had damage to his lower teeth, which required him to have a lower partial denture. (<u>Id.</u> at 7, ¶ 7.) On December 29, 2014, after his lower partial denture had been taken during a cell search at KVSP, Plaintiff paid for a new lower partial denture. (<u>Id.</u> at 7, ¶ 8.) After a year of not receiving his lower partial denture, Plaintiff made it clear to Defendant

---

[1] References herein to page numbers are to the page numbers in the Court's ECF pagination headers.

Woods that, because of the delay in not issuing the partial denture, the denture will not even fit when he does receive it.  (Id. at 8, ¶ 10.)

On October 21, 2015, Plaintiff expressed to Defendant Woods that, due to not having his partial denture, his teeth were being destroyed.  (Id. at 8, ¶ 13.)  Defendant Woods examined Plaintiff's teeth visually and could clearly see the deteriorating condition of Plaintiff's teeth, but Defendant Woods did nothing.  (Id.)  Defendant Woods did not attempt in any way to treat the teeth that were being destroyed in Plaintiff's mouth, which were causing him serious pain and discomfort and were affecting his quality of life.  (Id.)

During dental visits, both Defendants Woods and Hashem expressed to Plaintiff that the absence of Plaintiff's lower partial denture was causing damage to Plaintiff's teeth.  (Id. at 8, ¶ 14.) However, while both Defendants acknowledged the damage to Plaintiff's teeth, both Defendants did nothing.  (Id.)  Defendants Woods explained to Plaintiff that Plaintiff's broken teeth needed to be removed, but Plaintiff pleaded to have his teeth fixed, not taken out, and pleaded to receive his partial before all of Plaintiff's teeth needed to be removed.  (Id. at 8, ¶ 15.)

In the beginning of 2016, Dr. Woods placed a plastic crown on one of Plaintiff's teeth, but it immediately failed.  (Id. at 8, ¶ 16.)  Plaintiff states that he continued to ask for his lower partial, his upper partial, and adequate treatment for his teeth.  (Id.)

On February 9, 2016, Plaintiff received the lower partial denture that he paid for.  (Id. at 8, ¶ 17.)  Due to the delay in issuing his lower partial denture, Plaintiff has suffered five broken teeth, a broken porcelain crown, worn down remaining teeth, and Plaintiff has broken the teeth holding his bridge, which destroyed his bridge.  (Id. at 7, ¶ 9.)  Plaintiff asserts that, as of the date of his first amended complaint, October 17, 2016, neither of the Defendants have repaired the damage to Plaintiff's teeth caused by the delay in the delivery of Plaintiff's partial denture.  (Id at 9, ¶¶ 18-19.)  Finally, Plaintiff alleges that, while the delay in the delivery of his partial denture caused the damage, which Defendants may not be ultimately responsible for, Defendants are responsible for failing to treat the damage and deterioration of Plaintiff's teeth after the delay caused the damage. (Id. at 9, ¶ 21.)  Plaintiff states that each Defendant knew that, if they failed to treat Plaintiff's damaged teeth, the damage would continue to get worse, but both Defendants did nothing and

refused to provide any sort of effective treatment. (Id. at 11, ¶¶ 30-32.)

Plaintiff asserts that each Defendant has been made aware of the fact that Plaintiff has had a gastric bypass surgery, which makes it medically necessary for Plaintiff to chew his food to a near-liquid state. (Id. at 10, ¶ 24.) However, with his now-destroyed teeth, Plaintiff cannot do this. (Id.) Further, Plaintiff states that, due to the damage to his teeth, he cannot eat, brush his teeth, or sleep without pain, he cannot chew his food, he is in a considerable amount of pain, and suffers constantly every day. (Id. at 9, ¶¶ 19-20.)

### b. Statement of Undisputed Facts

1. At all relevant times, Plaintiff James W. Millner was incarcerated by the California Department of Corrections and Rehabilitation at Kern Valley State Prison. (First Amended Complaint, ECF No. 8, at 7, ¶ 3.)

2. Prior to December 2014, Plaintiff had several of his lower back teeth removed, requiring a lower partial denture. At Plaintiff's December 29, 2014 appointment with Dr. Garcia, a preliminary impression for a previously-planned lower partial denture was made. (Declaration of Dr. Matthew Milnes, ECF No. 44-3, ¶ 3.)

3. At Plaintiff's February 12, 2015 appointment with Dr. Napoles, a final impression for the lower partial denture was made. (Milnes Decl., ¶ 3.)

4. At Plaintiff's May 21, 2015 dental appointment, Dr. Garcia completed the bite registration for the lower partial denture. (Milnes Decl., ¶ 4.)

5. On July 20, 2019, Dr. Hashem examined Plaintiff for complaints of pain arising from a broken tooth. Dr. Hashem confirmed the broken filling and scheduled Plaintiff for a follow-up appointment to repair the filling. On July 27, 2015, Dr. Hashem repaired the broken filling. (Milnes Decl., ¶ 5.)

6. On August 27, 2015, Dr. Woods examined Plaintiff after Plaintiff complained that his gums were swollen. Dr. Woods diagnosed Plaintiff with an abscess with sinus tract formation. Dr. Woods prescribed antibiotics and recommended further monitoring for possible root canal treatment. (Milnes Decl., ¶ 6.)

7. On September 24, 2015, Dr. Woods treated Plaintiff for 2 cavities. At that time, Dr.

1  Woods noted that Plaintiff will still waiting for the lower partial denture.  (Milnes

2  Decl., ¶ 7.)

3  8.  On October 6, 2015, Plaintiff was examined by Dr. Hashem in response to Plaintiff's

4  complaint of a loose bridge.  Dr. Hashem recemented the bridge, and noted that one

5  of the tenth to which the bridge was attached was deteriorated to the gumline and

6  may require extraction.  (Milnes Decl., ¶ 8.)

7  9.  On October 19, 2015, Dr. Hashem examined Plaintiff in response to Plaintiff's

8  complaint that his bridge had fallen out.  Dr. Hashem discussed some options for

9  proceeding, recemented the bridge again, and referred Plaintiff to Dr. Liu for further

10  examination.  (Milnes Decl., ¶ 9.)

11  10.  On October 28, 2015, Dr. Woods performed a comprehensive dental examination

12  on Plaintiff and developed a treatment plan for various dental conditions.  Again,

13  Dr. Woods noted the need for a lower partial denture, which had been ordered and

14  was in progress.  Dr. Woods also noted the possible need for a partial upper denture

15  based upon Plaintiff's continuing problems with a failing bridge.  (Milnes Decl., ¶

16  10.)

17  11.  On November 5, 2015, Dr. Woods examined Plaintiff in response to Plaintiff's

18  complaint of broken crowns with sharp projections.  Dr. Woods treated the condition

19  by smoothing the porcelain crowns with a bur.  Dr. Woods again noted the need to

20  remove the bridge and pursue a partial upper denture.  (Milnes Decl., ¶ 11.)

21  12.  On November 23, 2015, Dr. Woods examined Plaintiff, removed Plaintiff's bridge

22  in preparation for the upper partial denture, prepared a new crown for another tooth,

23  and cemented the crown.  (Milnes Decl., ¶ 12.)

24  13.  On December 1, 2015, Dr. Woods extracted one of Plaintiff's teeth in further

25  preparation for the upper partial denture.  Dr. Woods also repaired the crown on

26  another tooth.  (Milnes Decl., ¶ 13.)

27  14.  On December 15, 2015, Dr. Napoles repaired another of Plaintiff's crowns.  (Milnes

28  Decl., 14.)

9

15.    On February 9, 2016, Plaintiff's lower partial denture was delivered. Dr. Woods indicated that the process to begin the upper partial denture would begin at the next visit. (Milnes Decl., ¶ 15.)

16.    On February 17, 2016, Dr. Woods examined Plaintiff in response to complaints of a broken filling. An appointment was made to repair the filling and Dr. Woods adjusted Plaintiff's lower partial denture. (Milnes Decl., ¶ 16.)

17.    On March 8, 2016, Dr. Woods examined Plaintiff in response to a complaint that the lower partial denture needed further adjustment. Dr. Woods adjusted Plaintiff's lower partial denture on that date. (Milnes Decl., ¶ 17.)

18.    On March 9, 2016, Dr. Woods examined Plaintiff in response to a complaint that a filling had fallen out of a lower front tooth. Dr. Woods replaced the missing filling the same day. (Milnes Decl., ¶ 18.)

19.    On March 29, 2016, Dr. Woods placed the new filling as scheduled on February 17, 2016. (Milnes Decl., ¶ 19.)

20.    On April 11, 2016, Dr. Woods examined Millner in response to complaints of sensitivity to pressure in a tooth on the lower left side. Dr. Woods diagnosed possible pulpitis and prescribed antibiotics with ibuprofen to treat Plaintiff's pain and inflammation. (Milnes Decl., ¶ 20.)

21.    On April 19, 2016, Dr. Woods examined Plaintiff and took preliminary impressions for Plaintiff's partial upper denture. (Milnes Decl., ¶ 21.)

22.    On May 24, 2016, Dr. Woods examined Plaintiff in response to complaints of a broken crown. Dr. Woods scheduled an appointment to replace the crown. On May 31, 2016, Dr. Woods replaced the broken crown in Plaintiff's mouth. (Milnes Decl., ¶ 22.)

23.    On June 15, 2016, Dr. Woods examined Plaintiff in response to a complaint that his lower partial denture was broken. Dr. Woods took an impression to repair the broken lower partial denture. Dr. Woods also took a final impression for the upper partial denture. (Milnes Decl., ¶ 23.)

24. On June 27, 2017, Dr. Woods examined Plaintiff in response to complaints of a broken crown. At that time, Dr. Woods replaced the crown with a large composite filling build-up. Dr. Woods completed a repair of the composite build-up on July 7, 2016. (Milnes Decl., ¶ 24.)

25. On July 12, 2016, the repaired lower partial denture was delivered. However, Dr. Woods noted that it was a very bad repair. Despite Dr. Woods' attempts to adjust the lower partial denture, it was not serviceable. Dr. Woods indicated that he would make a new lower partial denture. (Milnes Decl., ¶ 25.)

26. On July 19, 2016, Dr. Woods examined Plaintiff in response to complaints that his filling had broken again. Dr. Woods placed a new filling and took a preliminary impression for a new partial lower denture. Dr. Woods also took a bite registration for the partial upper denture. (Milnes Decl., ¶ 26.)

27. On September 15, 2016, Dr. Woods examined Plaintiff for an interim denture appointment. At that time, Dr. Woods took the final impression for the partial lower denture and noted that the wax try-in for the partial upper denture was successful. (Milnes Decl., ¶ 27.)

28. On September 21, 2016, Dr. Woods examined Plaintiff in response to complaints of a broken front tooth. Dr. Woods placed a temporary composite to repair the broken tooth. Dr. Woods also set an appointment for further repair. The further repair was completed on September 29, 2016. (Milnes Decl., ¶ 28.)

29. On November 14, 2016, Plaintiff partial upper denture was delivered. Dr. Woods also took a bite registration for the partial lower denture. (Milnes Decl., ¶ 29.)

30. On November 20 and 27, 2016, Plaintiff submitted CDCR 7362 Health Care Services Request forms asking to be seen by the dentist regarding a painful tooth on the lower left and about his partial upper denture. While Plaintiff was scheduled to be seen on November 29, 2016, Plaintiff refused to go to the dental clinic. (Milnes Decl., ¶ 30.)

31. On December 5, 2016, Dr. Woods examined Plaintiff in response to complaints of

pain in a tooth on the lower right.  However, during the examination, Plaintiff reported that he was feeling better.  While Dr. Woods ordered an x-ray, Plaintiff refused to present for the x-ray on December 7, 2016.  (Milnes Decl., ¶ 31.)

32.     On January 4, 2017, Dr. Woods examined Plaintiff to complete a wax try-in for the partial lower denture.  Dr. Woods noted that the try-in was successful.  (Milnes Decl., ¶ 32.)

33.     The partial lower denture was delivered on March 9, 2017.  Dr. Tadros adjusted the partial lower denture "to patient's satisfaction" on March 17, 2017.  (Milnes Decl., ¶ 33.)

34.     Neither Dr. Woods nor Dr. Hashem was responsible for how long it took to fabricate the lower partial denture for Plaintiff.  Dr. Woods and Dr. Hashem had no ability to accelerate the production of the lower partial denture ordered for Plaintiff.  (Milnes Decl., ¶ 35.)

### c.     Analysis of Defendants' Motion

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985.  Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical

12

care is provided.  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  "Deliberate indifference is a high legal standard," Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm.  Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).) "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference."  Snow, 681 F.3d at 987.  "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health."  Id.

In his first amended complaint, Plaintiff alleges that, even though both Defendants Woods and Hashem knew that the absence of a lower partial denture was causing Plaintiff's teeth to become damaged, both Defendants refused to promptly and effectively treat Plaintiff's deteriorating teeth.  (ECF No. 8, at 9-12.)  Further, Plaintiff asserts that, while Defendants Woods and Hashem may not be ultimately responsible for the delay in the delivery of his lower partial denture, the Defendants are responsible for failing to treat the damage caused to his teeth due to the delay.  (Id.)

Defendants Woods and Hashem do not contest the seriousness of Plaintiff's alleged dental needs. Therefore, the Court's analysis will evaluate only the deliberate indifference prong of Plaintiff's claim.

Defendants Woods and Hashem contend that they provided frequent and appropriate dental care to Plaintiff for a variety of dental conditions and that there is no evidence that either Defendant was deliberately indifferent to Plaintiff's dental needs. Initially, Defendant Woods has submitted evidence to the Court establishing that, between December 29, 2014, when the preliminary impression for Plaintiff's first lower partial denture was taken, and March 9, 2017, when Plaintiff's second lower partial denture was delivered to him, he examined Plaintiff for various dental conditions approximately twenty-four times. During those twenty-four dental appointments, Defendant Woods developed a treatment plan for Plaintiff's various dental conditions, diagnosed and treated Plaintiff for an abscess, cavities, broken crowns, broken and/or painful teeth, broken and missing fillings, and possible pulpitis, and fitted and adjusted Plaintiff's first and second lower partial dentures and Plaintiff's upper partial denture. Further, Defendant Hashem has submitted evidence to the Court showing that, between December 29, 2014 and March 9, 2017, he examined Plaintiff on four occasions and that, during those appointments, he confirmed the existence of, and repaired, a broken filling and recemented Plaintiff's bridge twice.

Finally, Defendants Woods and Hashem have provided the Court with the expert opinion of Dr. Matthew Milnes, a Regional Dental Director for the California Department of Corrections and Rehabilitation, who first opines that it took slightly longer than usual to finish the partial lower denture because Defendants and other dentists had to postpone work on the partial denture on several occasions to address Plaintiff's urgent dental conditions that arose after the prosthetic fabrication process had begun. (Milnes Decl., ¶ 36.) Second, Dr. Milnes opines that neither Defendant Woods nor Defendant Hashem were responsible for how long it took to fabricate the lower partial denture and both Defendants had no ability to accelerate the production of Plaintiff's lower partial denture. (Milnes Decl., ¶ 35) Third, Dr. Milnes states that, based on his review of Plaintiff's dental records, Defendants Woods and Hashem provided timely and appropriate care and treatment in response to Plaintiff's complaints. (Milnes Decl., ¶ 37.)

With this evidence, Defendants have met their burden of proof in demonstrating that they were not deliberately indifferent to Plaintiff's serious dental needs.  Therefore, the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita, 475 U.S. at 586.  In attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleading; he is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

First, Plaintiff argues that there is a genuine issue of material fact because his dental records establish that Dr. Napoles was deliberately indifferent to Plaintiff's serious dental needs.  However, since Plaintiff's motion to amend his first amended complaint to add Dr. Napoles as a defendant was denied on March 19, 2019, any evidence that Dr. Napoles may have been deliberately indifferent to Plaintiff's serious dental needs does not establish a genuine issue of material fact as to whether Defendants Woods and/or Hashem were deliberately indifferent.  (ECF No. 52.)

Second, Plaintiff argues that there is a genuine issue of material fact because the Dental Treatment Program Policies and Procedures requires that all work provided under a treatment plan must be completed within one year and Defendants Woods and Hashem did not provide Plaintiff with a lower partial denture within one year.  However, "state departmental regulations [and policies] do not establish a federal *constitutional* violation."  Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009).  Therefore, the fact that Defendants Woods and Hashem may not have completed all of the treatment required under Plaintiff's dental treatment plan within one year does not establish that Defendants Woods and/or Hashem were deliberately indifferent to Plaintiff's serious dental needs.

Third, Plaintiff argues that there is a triable issue of material fact because his dental records establish that, since Defendants Woods and Hashem failed to provide Plaintiff with teeth guards or something else to protect his teeth while the lower partial denture fabrication process was ongoing, the first lower partial denture broke when it did not fit properly on Plaintiff's destroyed teeth and Plaintiff cannot wear his second lower partial denture due to the fact that the teeth that would hold the partial denture in place are broken.  In other words, Plaintiff is attempting to show that the

course of treatment undertaken by Defendants Woods and Hashem – the lower partial denture fabrication process – was not medically acceptable under the circumstances because the Defendants failed to provide Plaintiff with something, such as a tooth or mouth guard, to protect his teeth while the denture fabrication process was ongoing. Snow, 681 F.3d at 987.

However, Plaintiff has not provided the Court with sufficient evidence to create a genuine dispute of material fact. Initially, since Plaintiff is not a dentist or an expert in dental care, Plaintiff is not qualified to render an opinion that the course of treatment undertaken by Defendants – the lower partial denture fabrication process – was medically unacceptable because Defendants did not provide Plaintiff with a mouth guard or some other protective device while the fabrication process was ongoing. Fed. R. Evid. 701, 702. Further, while Plaintiff argues that the more than 500 pages of his personal dental records attached to his opposition show that Plaintiff's argument is true, Plaintiff has failed to specifically identify the dental records attached to his opposition that support his argument. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017, overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2015) (en banc) ("[A] district court has no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment[.]'"). Moreover, based on the Court's review of Plaintiff's dental records attached to his opposition, the Court finds that Plaintiff's dental records clearly show that Plaintiff had numerous dental ailments while both of his lower partial dentures were being fabricated: an abscess, possible pulpitis, broken teeth, broken crowns, cavities, among other issues. However, Plaintiff's dental records do not directly prove, or support a reasonable inference, that Plaintiff only developed his various dental ailments while the fabrication process was ongoing because of Defendants Woods and Hashem failure to provide Plaintiff with something to protect his teeth while the denture fabrication process was ongoing. Thus, Plaintiff's dental records do not substantiate Plaintiff's contention that Defendants' decision to undertake the dental fabrication process without providing Plaintiff with some kind of item to protect his teeth during the process was medically unacceptable.

Therefore, Plaintiff has only established that there is a difference of opinion between

Defendants and Plaintiff concerning whether it was appropriate to undertake the lower partial denture fabrication process without providing Plaintiff with some protective device while the fabrication process was ongoing. "A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." <u>Snow</u>, 681 F.3d at 987.

Fourth, Plaintiff argues that there is a genuine issue of material fact as to whether Defendants Woods and Hashem were deliberately indifferent because, when he was transferred from KVSP to Pleasant Valley State Prison ("PVSP"), the PVSP dentists refused to give him the partial dentures that Defendant Woods had made. Plaintiff asserts that the PVSP dentists rejected the pre-partial work that Defendants Woods and Hashem had done, stated that Plaintiff needed additional pre-prosthetic care before Plaintiff could be properly fit for partial dentures, and informed Plaintiff that the partial dentures Defendant Woods had made would be useless after the new pre-prosthetic care was completed. However, Plaintiff has only established that there is a difference of opinion between Defendants Woods and Hashem and the PVSP dentists over the necessity for, or extent of, the pre-prosthetic care that Plaintiff needed before receiving partial dentures. As noted above, "[a] difference of opinion does not amount to … deliberate indifference to [Plaintiff's] serious [dental] needs." <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

Therefore, Plaintiff has failed to establish any genuine issue of material fact as to whether Defendants Woods and Hashem were deliberately indifferent to Plaintiff's serious dental needs. Accordingly, Defendants Woods' and Hashem's motion for summary judgment should be granted.

## III.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, the Court HEREBY ORDERS that Plaintiff's motion for appointment of an impartial dental expert witness, (ECF No. 46), is DENIED.

Further, it is HEREBY RECOMMENDED that:

1.  Defendants Woods' and Hashem's renewed motion for summary judgment, (ECF No. 44), be granted; and

2.  The Clerk of the Court be directed to enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 19, 2019**

UNITED STATES MAGISTRATE JUDGE